IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | CRIMINAL NO. 26-mj-7186-MAB |
| vs. | ) | Title 18, United States Code, Section 844(i) |
| QUENTIN HANKS, Defendant. | ) | |

## CRIMINAL COMPLAINT

I, Jeremy Johnson, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief:

## COUNT 1
### ARSON

On or about October 19, 2026, in St. Clair County, within the Southern District of Illinois,

**QUENTIN HANKS,**

defendant herein, maliciously damaged and destroyed by means of fire the buildings located at 240 S. 88th Street, Cahokia Heights, IL 62207 and 220 S. 88th Street, Cahokia Heights, IL 62207, used in interstate commerce, in violation of Title 18, United States Code, Section 844(i).

## AFFIDAVIT

1. Affiant, Jeremy Johnson, is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and has been since June of 2018. Affiant's current assignment is with the St. Louis Field Office of the Kansas City Field Division where Affiant investigates violations of federal law pertaining to firearms and violent crimes involving the use of firearms, explosives, and fire. Affiant is a Certified Explosive Specialist (CES). The CES

program's primary mission is to support ATF's explosives enforcement mission through active field experience and advanced training in explosives-related topics. Affiant is also a Certified Fire Investigator Candidate (CFIC). The CFI program's primary mission is to investigate fires relating to origin and cause. Affiant has received training in investigative techniques related to determining a fire's origin and cause. Before joining the ATF, Affiant was a police officer with the St. Louis Metropolitan Police Department (SLMPD). Before that, Affiant served in the United States Marine Corps for approximately ten years. Affiant is familiar with, and has used, various methods of investigations which include electronic surveillance, interviews of suspects and witnesses, search warrants, arrest warrants, and the handling of confidential informants.

2. The facts in this affidavit come from Affiant's personal observations, Affiant's training and experience, and information obtained from other agents, law enforcement officers, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of Affiant's knowledge about this matter.

3. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. 844(i) (Use of fire to damage or destroy any building affecting interstate commerce), have been committed by Quentin Hanks.

4. On October 19, 2026, the Office of the Illinois State Fire Marshal's Special Agents and ATF Special Agents responded to a commercial fire at One Spa, 220 S. 88th Street, Cahokia Heights, IL 62207, and Fuji Spa, 240 S. 88th Street, Cahokia Heights, IL 62207. The fire was reported via a 911 call at approximately 3:00 AM. Both addresses are located within the Southern District of Illinois. Both Fuji Spa and One Spa locations advertise massage and/or spa services and

are used for commercial purposes meaning both locations are buildings and/or businesses that affect interstate commerce.

5. At approximately 6:00 AM, and upon arrival law enforcement arrival, Affiant observed active fire suppression occurring at the Fuji Spa location. Investigators conducted quick observations of the fire scene at the Fuji Spa. The building's roof had collapsed, and numerous walls had fallen into the structure. Law enforcement then learned there was a second fire approximately 250 yards to the north of Fuji Spa. The second fire was inside the customer entrance of One Spa. Law enforcement then responded to One Spa's location.

6. Upon arrival at the One Spa location, law enforcement learned that the employees, landowner, business owner, and a client from Fuji Spa were in the One Spa parking lot. Additionally, the sole occupant and employee of One Spa, was also in the parking lot. Law enforcement first met with the landowner and building owner for both Fuji Spa and One Spa. This individual provided written consent for a fire scene examination at both spas.

7. Law enforcement first started to process One Spa. The fire damage was observed to be primarily in the customer's waiting room of One Spa. ATF Special Agents trained in fire investigation began to process the scene. The One Spa waiting room had extensive smoke discoloration and there was noticeable mass loss to a couch on the north wall. The mass loss was localized to the right side of the couch. The couch was removed after being photographed and underneath the couch and localized to the right side was a pool of hydrocarbons. This pooling occurs when petroleum-based synthetic materials, like polyurethane foam and polyester fabric, burn. Following the scene examination, Special Agents relying on training and experience

determined the fire's cause was incendiary and furthered by a transient flame device[1] igniting the couch.

8. Following the scene examination, fire investigators began to process the Fuji Spa scene. Affiant remained at the One Spa location and interviewed the witnesses.

9. The landowner and building owner was interviewed first. He stated he is the land and building owner for both spas. He learned of the fires after he received a call. He arrived at the spas at approximately 3:34 AM. Upon his arrival, he was advised there was a missing Fuji Spa employee that was presumed to be dead inside the Fuji Spa. He also learned from the conversation with an employee that there was a suspicious, unidentified male that was at One Spa. The male was known to the employee because he attempted to steal items from the One Spa a couple weeks before the fire. That same male was at One Spa before the fire. The unidentified male came to the spa under the influence of alcohol, and the same employee allowed him to sleep in a back bedroom at One Spa. The employee provided the landowner and building owner a telephone number for the unidentified male. This telephone number was (314) 503-0173.

10. The employee who spoke to the landowner and building owner was interviewed next. The employee reported that she was at One Spa from the day before the fire up until the time of the fire. She first learned about the fire at Fuji Spa from an employee who ran to the living quarters at One Spa and knocked on the door. She exited One Spa and observed a large fire at Fuji Spa. She then smelled smoke coming from One Spa and opened the customer entrance door and observed fire damage in the waiting room. She then mentioned the unidentified male, and how he

[1] A transient flame device is a technical or legal classification for a handheld consumer product designed to produce a temporary, controlled flame. The most common example of this is a standard pocket lighter

called her in the evening of October 18, 2026. She also provided the unidentified male's telephone number as (314) 503-0173. Affiant recognized this telephone number as the same telephone number previously provided to him by the landowner and building owner. The employee stated she knew the unidentified male was a bartender, he was missing a finger on a hand, he was a small white male, and he did not have a beard. Further, the unidentified male also drove a dark four door car. She saw the vehicle in the parking lot prior to the fire and then, when she was notified of the fire at Fuji Spa, she noticed the vehicle was gone. The employee observed the unidentified male sleeping in the rear of One Spa before she learned of the fire. She allowed him to sleep there because he was intoxicated.

11. Affiant next conducted an interview with another witness. This witness stated he arrived at One Spa and visited with "Jackie." "Jackie" was later identified as the employee that Affiant spoke to previously. The witness further stated he then went to Fuji Spa to try and sleep. He stated he arrived at the spa locations at approximately 1:00 AM. He observed a dark SUV parked in the parking lot of One Spa. He did not observe any other vehicle parked at Fuji Spa. He went inside Fuji Spa and went to a room by himself. He later noticed smoke coming into his room and he fled the building.

12. Affiant provided an ATF Intelligence Research Specialist (IRS) with the unidentified white male's telephone number. Affiant also provided the IRS with the descriptors learned from the interviews such as the unidentified male working as a bartender and missing a finger. The IRS was able to use law enforcement databases to identify **QUENTIN HANKS** from the telephone number. The IRS also searched social media platforms and identified **HANKS's** social media account. Through a review of **HANKS's** Facebook account, the IRS discovered that

**HANKS** had two fingers missing and that **HANKS** had also made a social media post about how the fingers were amputated. The IRS identified **HANKS's** vehicle as a 2022 Subaru Forester bearing Missouri license plate: ZK8J0M. The IRS queried license plate reader databases. The plate was observed traveling in the City of St. Louis at approximately 3:30 AM, on October 19, 2026. The IRS also discovered **HANKS** was a bartender at Dave and Busters.

13. Affiant was provided with a Missouri Department of Revenue photograph of **HANKS**. Affiant showed the photograph to the employee whom Affiant spoke to previously and she emphatically stated that the individual depicted in the photograph, **HANKS**, was the unidentified white male.

14. Additionally, ATF Special Agent Timothy Jones observed surveillance footage at the Flying J Travel Center, in Alorton, IL. SA Jones was able to locate a video and a purchase made by **HANKS**. The purchase was made at 2:48 AM on October 19, 2026.

15. ATF St. Louis Special Agents began to search for **HANKS**. **HANKS** was located at a location in St. Louis, Missouri. **HANKS** was detained by Special Agents without incident. **HANKS** provided consent to search through his cellular telephone and his vehicle was towed. **HANKS** was transported to the ATF St. Louis Field Office for questioning.

16. Affiant conducted a post-Miranda interview with **HANKS**. **HANKS** confessed to setting fire to the couches at both One Spa and Fuji Spa. **HANKS** further stated he used his lighter to set the fires. **HANKS** stated he set the fires because he paid for sexual services at One Spa, but he was unable to ejaculate. **HANKS** stated he was under the influence of marijuana, and he was angry with the sexual encounter. **HANKS** stated he then decided to ignite the couch on fire at One Spa. **HANKS** further admitted to starting the fire on the right side of the couch. Affiant knew this

statement to be consistent with Affiant's observations of the damage to the couch at One Spa. **HANKS** stated he left One Spa and the customer door closed behind him. **HANKS** further stated that he then decided to drive to Fuji Spa because the masseuse that failed to provide him with his sexual gratification also worked at Fuji Spa. **HANKS** stated that the customer entrance door was open. **HANKS** then told Affiant that he ignited the couch in the waiting room and a tree. **HANKS** did not warn anyone at either Fuji Spa or One Spa about the fires he set. **HANKS** informed Affiant that he assumed someone was still inside One Spa, and he also assumed people could be inside Fuji Spa. He then departed the spas' locations and went back to St. Louis.

17. Following the interview, **HANKS** provided consent for Affiant to search through his vehicle. During the search, Affiant found a lighter and **HANKS** acknowledged that the lighter was used to ignite the couches.

18. On October 20, 2026, law enforcement and the Affiant located a deceased individual from the fire debris at the Fuji Spa location.

**CONCLUSION**

19. Based on the foregoing, Affiant believes probable cause exists to believe that **QUENTIN HANKS** maliciously damaged by fire One Spa, 220 S. 88th Street, Cahokia Heights, IL 62207, and Fuji Spa, 240 S. 88th Street, Cahokia Heights, IL 62207, on October 19, 2026, within the Southern District of Illinois in violation of Title 18, United States Code, Section 844(i).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Jeremy Johnson
Special Agent, ATF

/s/ Cahal McColgan
Cahal McColgan
Assistant United States Attorney

Attested to by the Affiant in accordance with the requirements of Fed. R. Crim. P. 4.1 by electronic means on October 21, 2026.

Mark A. Beatty

Honorable Mark A. Beatty
United States Magistrate Judge